No. 21-2895

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

IN RE NIASPAN ANTITRUST LITIGATION

A.G.C. Building Trades Welfare Plan; City of Providence, Rhode Island; Electrical Workers 242 and 294 Health & Welfare Fund; International Union of Operating Engineers Local 49 Health and Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; New England Electrical Workers Benefits Fund; Painters District Council No. 30 Health & Welfare Fund; United Food & Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund; Miles Wallis; Carol Prasse,

*Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

---

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES
## OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES

---

Tara S. Morrissey
Tyler S. Badgley
U.S. CHAMBER LITIGATION CENTER
1615 H St., NW
Washington, DC 20062

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* certifies that it has no outstanding shares or debt securities in the hands of the public, and it does not have a parent company.  No publicly held company has a 10% or greater ownership interest in *amicus curiae.*

/s/ Adam G. Unikowsky

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF INTEREST....................................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ........................................................................................4

I.   Rule 23(B)(3) Requires a Class That Is Ascertainable by Reference to Objective and Reliable Criteria. ......................................................4

II.  Ascertainability Requires that Almost All Class Members be Identifiable from Objective and Reliable Records.......................................6

III. The District Court Did Not Abuse Its Discretion in Holding that Plaintiffs Failed to Prove Ascertainability...........................................11

     A.   Plaintiffs failed to establish a reliable method of identifying class members from PBMs' records. ........................................11

     B.   Affirming the district court's decision would not "effectively bar large class actions," as Plaintiffs claim. .............................18

IV.  The District Court's Decision Comports with the Policies Underlying Rule 23 and the Ascertainability Requirement...........................20

V.   This Case Would Be a Poor Vehicle to Reconsider Ascertainability En Banc. ...........................................................................................25

CONCLUSION ..................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015)................... 1-2, 4, 5, 6, 7, 20, 23

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)............................................21

*City Select Auto Sales Inc. v. BMW Bank of North America Inc.*, 867 F.3d 434 (3d Cir. 2017) ...................................................................4, 9, 10, 22, 23

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................................11

*Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020).............................10, 12, 19

*Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012) ...................7

*In re Ranbaxy Generic Drug Application Antitrust Litigation*, 338 F.R.D. 294 (D. Mass. 2021)..........................................................................25, 26

## STATUTES

28 U.S.C. § 2072(b) ................................................................................................22

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(b)(3)..........................................................................................5, 7

1 *McLaughlin on Class Actions* § 4:2, Westlaw (18th ed. database update Oct. 2021)....................................................................................................7

All parties consent to the filing of this amicus brief.[1]

## STATEMENT OF INTEREST

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

Businesses, including *amicus*'s members, are almost always the defendants in class action litigation. Businesses—and indirectly the customers, employees, and communities that depend on them—have a strong interest in the proper application of the rules governing class certification. Among those rules are the requirement that a class be ascertainable—that is, that it be "defined with reference to objective criteria," and that there be a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus curiae* states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

*v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quotation marks omitted).  The Court should reiterate that the ascertainability requirement is well-grounded in the text and policy of Rule 23, and that the district court correctly applied that requirement to the facts of this case.

## SUMMARY OF ARGUMENT

This Court's precedents correctly hold that a class cannot be certified under Federal Rule of Civil Procedure 23(b)(3) unless it is ascertainable.  Under Rule 23(b)(3), a class cannot be certified unless class litigation is superior to individualized litigation, and common issues predominate over individualized issues.  These requirements will necessarily not be met if it is impossible to ascertain reliably who is in a class.

To show ascertainability, a plaintiff must demonstrate that either *all*, or *almost all* class members can reliably be ascertained from objective records, such as documents from a company's database.  The mere prospect of proffering self-serving affidavits from putative class members is not sufficient to show ascertainability.  To be sure, a defendant cannot defeat class certification merely by showing the theoretical possibility that objective records do not establish a class's composition with absolute precision.  In some cases, objective records may be slightly over-inclusive, and the additional work necessary to ascertain the class with precision may not be enough to defeat class certification.  But where objective records are insufficient to

feasibly determine class membership of *any* class member, the class is not ascertainable.

Here, the district court correctly ruled that the class was not ascertainable. The class consisted of "end payors" of Niaspan—*i.e.*, the health plan or insurer that bears ultimate responsibility of the cost of Niaspan obtained by a consumer. Plaintiffs argued that records of Niaspan purchases maintained by pharmaceutical benefit managers (PBMs) could be used to identify those end payors. However, discovery revealed that those records did not identify end payors, but instead identified entities that had contracted with the PBMs, which were often not end payors. To correct this problem, Plaintiffs put forth expert testimony purporting to show that, with additional analysis and processing, PBM records could be used to identify end payors. However, it quickly became clear that Plaintiffs' expert could not figure out how this analysis and processing would work, and the district court found the expert not credible. Without that expert, Plaintiffs had no way to identify class members. Unsurprisingly, the Court held that Plaintiffs did not prove ascertainability.

Plaintiffs argue that the policies behind the ascertainability requirement and Rule 23 require certifying the class. However, no policy supports certifying a class where class members cannot be identified. Plaintiffs' arguments boil down to unpersuasive quibbles with the district court's factual findings. For the same reason,

this fact-heavy case is an inappropriate vehicle for reconsidering ascertainability en banc or answering broader questions about ascertainability's status.

## ARGUMENT

### I.    Rule 23(B)(3) Requires a Class That Is Ascertainable by Reference to Objective and Reliable Criteria.

As this Court has repeatedly recognized, a class cannot be certified unless it is ascertainable.  To meet the ascertainability requirement, a plaintiff must prove that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  *Byrd*, 784 F.3d at 163 (internal quotation marks omitted).

Because Rule 23 does not explicitly utter the word "ascertainable," some members of this Court have authored separate opinions urging the Court to jettison the ascertainability requirement.  *See Byrd*, 784 F.3d at 172 (Rendell, J., concurring); *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 443-44 (3d Cir. 2017) (Fuentes, J., concurring).  Of course, the Court is bound by its precedents holding that a class cannot be certified unless it is ascertainable.  But with respect to those separate views, this Court's precedents are correct.  Ascertainability is not an atextual *addition to* the express requirements of Rule 23(b)(3); it is a textually-grounded *application of* those express requirements.  Specifically, it is an inherent

4

prerequisite for Rule 23(b)(3)'s superiority and predominance requirements to be satisfied.

Rule 23(b)(3) states that a damages class cannot be certified unless the putative class representative proves, among other requirements, superiority and predominance. In order to prove superiority, the plaintiff must establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—even after taking account of "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). And in order to prove predominance, the plaintiff must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.*

Ascertainability is a corollary of those two requirements. Ascertainability is not coextensive with Rule 23(b)(3)'s requirements of predominance and superiority; a class can be ascertainable without the class meeting the predominance and superiority requirements. *Byrd*, 784 F.3d at 165, 168 (noting that ascertainability is "independent from the other requirements of Rule 23," and a court should not "inject[] the explicit requirements of Rule 23 into the ascertainability standard without actually analyzing those requirements under the correct portion of Rule 23"). But the converse is not true: a class-action plaintiff cannot satisfy the predominance and superiority requirements *unless* the class is ascertainable.

It is easy to see why. A class action will not be manageable—and hence will not be "superior" to other methods of adjudication—if a court cannot readily discern who is in the class in the first place. And likewise, it will not be possible for a plaintiff to prove that common questions "predominate over any questions affecting only individual members" if each additional class member's participation will automatically generate a non-obvious question affecting only the individual member—*i.e.*, whether that person is in the class. Only when the class representative can meet the basic requirement of explaining how the class members may be identified, can the court go on to the next step in the class-certification analysis—analyzing whether, for that readily identifiable group of class members, class litigation is superior and common questions predominate. *See Byrd*, 784 F.3d at 162 ("Ascertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23.").

## II.    Ascertainability Requires that Almost All Class Members be Identifiable from Objective and Reliable Records.

Once ascertainability is properly understood as a rule about superiority and predominance, its practical contours naturally follow. As this Court has explained, ascertainability concerns the *method* for identifying class members—and specifically, whether class members may reliably be identified "with reference to objective

criteria." *Byrd*, 784 F.3d at 163 (quotation marks omitted). Whether there are "objective criteria" for determining class membership, in turn, depends on whether membership can confidently be assessed on the basis of records not reasonably subject to dispute. In other words, ascertainability requires *both* that the objective records exist, *and* that those objective records can actually be used to generate a reliable list of class members. That standard reflects the function of the ascertainability doctrine: The presence or absence of the requisite records provides guidance on whether the class-action mechanism is genuinely "superior" and whether common questions will in fact "predominate" over individualized inquiries into class membership. Fed. R. Civ. P. 23(b)(3).

What matters for determining the presence of "objective criteria" in this context is whether class membership can readily be determined from existing records. *See* 1 *McLaughlin on Class Actions* § 4:2, Westlaw (18th ed. database update Oct. 2021) ("Courts properly look below the surface of a class definition to determine whether the *actual process of ascertaining* class membership will necessitate delving into individualized or subjective determinations." (emphasis added)). This focus makes sense because it speaks to whether identifying class members will require the "extensive and individualized fact-finding or 'mini-trials'" that preclude satisfaction of Rule 23(b)(3)'s express requirements. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012); *see* 1 *McLaughlin on Class Actions* § 4:2 (explaining that

"it must be administratively feasible for the court to determine whether a given person fits within the class definition without effectively conducting a mini-trial of each person's claim," and that ascertainability thus "overlaps with" the superiority inquiry).

This Court has made clear that the objective records need not *perfectly* delineate the composition of the class. Put another way, a defendant in a class action cannot defeat class certification merely by pointing to the theoretical possibility that a list of individuals generated from objective records might exclude some class members, or may include some individuals that are not in the class. But to obtain class certification, the plaintiff has the burden to prove by satisfactory evidence that the objective records get the court *most of the way there*. That is, the plaintiff must show that the objective records produce a list that is largely coextensive with the class, and that any additional inquiries to determine the class's precise composition will be sufficiently straightforward that class litigation is still superior to individualized litigation and common questions still predominate over individual ones.

This Court's precedents illustrate those principles. In *City Select*, the class members were auto dealerships who allegedly received junk faxes. Class counsel proposed deriving a list of class members from the defendant's business database, which included a list of customers and fax numbers. The district court denied class

certification on the ground that there was no absolute guarantee that every person in the database actually received a junk fax. 867 F.3d at 442.

This Court reversed the district court's ascertainability holding on narrow grounds. The Court held that the mere possibility that the database was overinclusive was not, in and of itself, sufficient grounds to deny class certification. *Id.* at 442 & n.4. At the same time, it did not adopt the plaintiffs' far-reaching view that they could establish ascertainability merely by offering to submit affidavits from the customers listed in the database. Instead, the Court reached a position in between. It found that if the plaintiff could show that the database was *almost* coextensive with the class, then the plaintiff could use affidavits to resolve any theoretical delta between the two without running afoul of the ascertainability requirement. The court explained: "Even if it is true that the BMW fax was not sent to every customer who had a fax number in the database during the relevant time period, the class could still be certified, so long as there is a method for determining which customers *did* receive such faxes, which could be by affidavit. *While a high degree of over-inclusiveness could prevent certification, any degree of over-inclusiveness will not do so.*" *Id.* (second emphasis added). It then observed that there was "significant circumstantial evidence that the faxes were sent to every customer in the database at that time." *Id.* at 442 n.5. Rather than resolve in the first instance whether the class was ascertainable, the court directed the district court to "consider this evidence in

assessing whether the relevant portion of the database coupled with attestations satisfies our ascertainability standard." *Id.*

Similarly, in *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020), the members of the putative class were delivery drivers who alleged they delivered mattresses for Sleepy's full-time. *Id.* at 480. The Court ruled that the putative class was ascertainable. The Court's ruling hinged on two propositions. First, the objective records—driver logs, manifests, and pay statements—yield a close approximation of the putative class. *See id.* at 481. Although those objective methods might yield a slightly overbroad list of potential class members, "a class can still be ascertainable even if it may be slightly overbroad." *Id.* Second, the evidence could be "matched with and verified by the putative class members' affidavits" in order to determine the composition of the putative class with precision. *Id.* at 480. Indeed, the district court had been able to use "this same set of evidence to determine on the merits that the named plaintiffs were employees." *Id.* This Court also noted that "it is not clear that there is an overbreadth issue with the new proposed class of 111 drivers." *Id.* at 481. In other words, in view of the small proposed class size, it was reasonably feasible to obtain and analyze affidavits that would fill in the slight gaps left by the objective evidence.

Thus, this Court's precedents hold that a class is ascertainable if the class representative can prove that objectively verifiable information either is *sufficient*, or

10

*almost sufficient*, to ascertain the boundaries of a class—and if it is almost sufficient, that some methodology (such as affidavits) is sufficient to determine those boundaries with precision.  If no objectively verifiable information exists—or if it does exist, but if the plaintiff cannot prove that the differences between that information and the class composition are sufficiently small—the class is not ascertainable, because predominance and superiority necessarily will not have been satisfied.

## III.    The District Court Did Not Abuse Its Discretion in Holding that Plaintiffs Failed to Prove Ascertainability.

As the district court rightly concluded, Plaintiffs did not meet their burden to prove ascertainability.  Plaintiffs provided objective records to the Court, but Plaintiffs did not prove that any—much less all—class members could feasibly be identified from those objective records.

### A. Plaintiffs failed to establish a reliable method of identifying class members from PBMs' records.

Courts must apply "a rigorous analysis" to putative class actions to ensure that both "the prerequisites of Rule 23(a)" and "Rule 23(b)(3)'s predominance criterion" have been satisfied before any class is certified.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal quotation marks omitted).  Plaintiffs must demonstrate "through evidentiary proof" that their claims "in fact" can be litigated on a class-wide basis without the need for individualized mini-trials.  *See id.*  Consistent with *Comcast*, this Court has made clear that the plaintiff bears the burden of proving

11

ascertainability. *Hargrove*, 974 F.3d at 477 ("[I]n our Circuit a Rule 23(b)(3) class must also be currently and readily ascertainable based on objective criteria. The plaintiff has the burden of making this showing by a preponderance of the evidence, and a district court must undertake a rigorous analysis of the evidence to determine if the standard is met." (internal quotation marks omitted)).

Here, Plaintiffs failed to meet their burden of proving that the putative class is ascertainable. As Defendants' brief explains in detail, the putative class consists of end payors for Niaspan prescriptions. When health plans are self-insured, the health plans are end payors. When health plans are fully insured, the plans' insurers are end payors. For the class to be ascertainable, Plaintiffs need to put forth a reliable way of (a) identifying Niaspan purchases, and (b) determining, from those purchases, whether the end payor is the health plan or the insurer.

Plaintiffs satisfied the first burden, but not the second. Plaintiffs contended that they could identify class members based on records of pharmaceutical transactions maintained by pharmacy benefit managers ("PBMs"). Those records conceivably might supply a reliable mechanism of identifying Niaspan purchases. But it is impossible to discern from those records the identity of the end payor.

- In some cases, an employer-sponsored health plan will appear on the PBM's record. In that scenario, the health plan may, or may not, be a class member. When the health plan is self-insured, the health plan is

12

the class member.  When the health plan is fully-insured, the insurer, which reimburses the health plan, is the class member.

- In some cases, an insurer will appear on the PBM's record.  In that scenario, the insurer may, or may not, be a class member.  When the insurer is insuring a fully-insured health plan, the insurer is a class member.  When the insurer is merely acting as an administrator for a self-insured health plan, the health plan, not the insurer, is the class member.

- In some cases, the PBM's record of a Niaspan transaction will identify both a health plan and an insurer.  This information establishes that both entities were involved, in some capacity, in the transaction.  But it does not show who the end payor was, and the answer to that question will vary from transaction to transaction.  If the health plan is fully insured by the insurer, then the insurer is the end payor.  If the insurer is acting as the health plan's administrator, then the health plan is the end payor.

The complexity does not end there.  Sometimes there is a chain of entities between the PBM's contractual counterpart and the end payor.  Sometimes an entity may be an administrator for one plan sponsored by an employer, and the insurer for a different plan sponsored by the same employer.   Sometimes an entity will switch from being an administrator to an insurer for the same health plan, or vice versa.

13

Of course, if Plaintiffs could prove that there was some reliable way to extract the identity of the end payor from the PBMs' records, then those records could be used to establish an ascertainable class. Alternatively, if Plaintiffs could show that it was *usually* possible to extract the identity of the end payor from the PBMs' records, those records could potentially be a starting point for meeting the ascertainability requirement. If Plaintiffs could reliably and efficiently winnow down the number of ambiguous PBM records, and develop a reliable and efficient mechanism of identifying the end payor for that winnowed-down set of transactions, then they could potentially prove ascertainability.

But Plaintiffs did not make these showings. As Defendants recount, Plaintiffs' expert, Craft, simply had no idea how to use PBMs' records to determine the identity of end payors in *any* case. Every method she proposed was riddled with errors. The district court was entitled to, and did, find her ever-shifting methodologies unreliable. And without reliable testimony from an expert, Plaintiffs were left with a stack of PBM records that merely listed an insurer, a health plan, or both— information that, on its own, is useless in ascertaining class membership. The only conclusion on this record is that the class was not ascertainable.

Plaintiffs' appellate arguments boil down to a series of factual assertions with little support in the district court record. Plaintiffs claim to have proffered a "methodology that includes three mutually-reinforcing layers—(i) PBMs identify class

members in the first instance when providing the data; (ii) data is cost-efficiently batch filtered and name matched with techniques that distinguish administrative intermediaries from end-payor class members; and (iii) if any lingering confusion, the option remains for a single-question form affidavit to be sent to the two already-identified potential class members to confirm which is the end-payor class member." Opening Br. 26.  But these "layers," individually or in combination, do not establish that the class is ascertainable.

As to the first "layer," the district court concluded that, contrary to Plaintiffs' representation, PBMs could *not* "identify class members in the first instance when providing the data."  After analyzing Craft's testimony in detail, the district court made the factual finding that Plaintiffs "have not presented an administratively feasible mechanism to distinguish between class members and mere intermediaries such as fully insured plans." A-89.  It noted that Plaintiffs "may not adopt a methodology that changes as defendants test its reliability and, in the end, fails to accomplish what is required."  *Id.*  Plaintiffs fail to show that this finding is clearly erroneous.  Plaintiffs confidently assert that "PBMs could flag the approximately 94% of employers where the payor contracts with the PBM directly."  Opening Br. 33.  But how?  Plaintiffs have never explained, either in the district court or in this Court, how PBMs could do this.  Plaintiffs represent that roughly 6% of employers "are both self-funded and potentially use an [administrator]."  Opening Br. 18.  But it does not

15

follow, as Plaintiffs apparently contend, that PBMs can segregate the records corresponding to those 6% of employers.  Merely *knowing* that 6% of employers are self-funded and use an administrator says nothing about *which* records correspond to those employers.

To be sure, this Court has repeatedly held that a slightly overbroad class may be ascertainable.  *Supra*, at 10.  But that is true only when there is a feasible method of identifying the questionable cases that must be resolved on a case-by-case basis.  Suppose, for instance, Plaintiffs had established an efficient and reliable algorithm that was able to identify the end payor with respect to 94% of the PBM records, and was also able to identify *which* 6% of the PBM records were ambiguous as to the end payor.  In other words, the algorithm could reliably take a large stack of PBM records and filter out a small stack of PBM records for which additional work was necessary to determine the end payor.  In that scenario, the class might be deemed ascertainable, in view of this Court's holdings that the need for affidavits for a small number of putative class members should not foreclose class certification.

Here, however, Plaintiffs' proposed algorithms did not work that way.  Plaintiffs predicted that only 6% of PBM records corresponded to self-insured employers that used an administrator—but there was no way, in advance, to know *which* records met that description.  The only way to filter out those records was to conduct

16

an individualized analysis of 100% of the records—thus establishing that the class is not ascertainable.

As to the second "layer," Plaintiffs assert: "Even if a PBM did not separately flag these ASO/TPA transactions, electronic filtering and name matching will distinguish between intermediary and non-intermediary transactions; PBMs' coding can differentiate fee-only ASOs from true end payors, and name matching against lists of known intermediaries can filter out non-class members." Opening Br. 34 (internal citation omitted). But how? Uttering the phrases "electronic filtering" and "name matching" does not satisfy Plaintiffs' burden of proof. Plaintiffs must explain *what* is being "filtered" and "matched" and *how* this "filtering" and "matching" assist in identifying class members. Plaintiffs cite the declaration of their expert, *id.*, but the declaration is vague and the district court found the expert's assertions not to be credible.

Plaintiffs' proposed third "layer" consists of affidavits. Although this Court has previously endorsed the use of affidavits to ascertain class members, the word "affidavits" is not a talisman that can be used to ward off ascertainability concerns. Instead, the proponent of class certification must show how affidavits can be used to ascertain the class. Here, as Defendants point out, Plaintiffs waived this argument by failing to present it to the district court, and even on appeal, they do not explain

what those affidavits would say, who would sign them, or how the signatories could be found.  Defendants' Br. 37-45.

In sum, on the record before this Court, Plaintiffs have put forth PBM records that are never sufficient to determine end payors, plus vague assertions from an expert that the district court found not credible, plus the promise of unspecified "affidavits."  That evidence does not come close to establishing that the district court abused its discretion in holding that Plaintiffs failed to prove ascertainability.

## B. Affirming the district court's decision would not "effectively bar large class actions," as Plaintiffs claim.

Plaintiffs devote a section of their brief to the proposition that the district court's decision, if upheld by this Court, would have the practical effect of barring large class actions in this Circuit.  Opening Br. 51-53.  That is not the case.  The district court's decision was laser focused on failings of Plaintiffs' expert witness.  Class actions, both large and small, can still be certified in this Circuit if plaintiffs put forth an adequate evidentiary record.

Plaintiffs point to the "detailed and comprehensive records" in this case, as well as the "[m]odern software tools" that enable "automated programmatic analysis."  Opening Br. 51.  One can imagine cases where detailed and comprehensive records, coupled with modern software tools and automated programmatic analysis, can allow a court to ascertain a class.  The problem here is that the "detailed and

comprehensive records" do not actually record the information the court needs, and Plaintiffs did not prove that "modern software tools" needed to complete the ascertainability task exist.

Plaintiffs also complain that the Court should not "bar large classes" because cases involving large classes are "precisely where the class mechanism is most needed." Opening Br. 52-53. No one is suggesting barring large classes. That said, it is inevitable that large classes will, in general, be harder to certify than small ones. Commonality and typicality will generally be harder to prove as the class gets larger, because the larger a class gets, the more likely it is that disparities among class members' experiences will emerge. Likewise, predominance and superiority will generally be harder to establish in large classes, because dealing with individualized inquiries is more difficult for a large class than a small class. Indeed, in *Hargrove*, this Court deemed the class ascertainable based in part on its observation that the class included only 111 members, which would make it feasible to use affidavits to supplement deficiencies in the objective records. 974 F.3d at 481. The Court may have reached the opposite conclusion if the class was over two orders of magnitudes bigger, as in this case. *See* Defendants' Br. 11 (noting that "tens of thousands" of end payors are in the class).

Nothing in Rule 23 supports putting a thumb on the scale in favor of large classes, as Plaintiffs suggest. The ascertainability requirement—and all other requirements for class certification—apply to all classes, large and small. If larger classes are harder to certify, this simply implies that large classes will be unusual, not that ordinary legal requirements should be bent to accommodate the needs of plaintiffs' counsel seeking to maximize class size. That said, in this case, Plaintiffs' failure to put forth any reliable method of ascertaining class members would be a bar to class certification no matter how big the class.

## IV.    The District Court's Decision Comports with the Policies Underlying Rule 23 and the Ascertainability Requirement.

Plaintiffs identify five justifications for the ascertainability requirement, but contend that none of those justifications support the district court's decision. Opening Br. 47-50. To the contrary, all five justifications apply with full force here. Indeed, this case illustrates exactly why this Court has correctly construed Rule 23 to encompass an ascertainability requirement.

*First*, ascertainability protects absent class members' right to opt out. *Byrd*, 784 F.3d at 165, 175; *see* Opening Br. 47-48. Here, an absent employer may never learn of this litigation. Suppose an employer self-insures, but hires an insurer to administer prescription drug benefits. If the insurer is identified on the PBM's records and receives notice of this class action, the employer might never find out. The

insurer might not believe itself contractually obligated to send class action notices to employers and might not want to deal with the administrative headache of discerning who Niaspan end payors might be.

Plaintiffs claim that class-action notices are unnecessary because there are "notice experts" who "maintain proprietary databases that enable the provision of direct notice to all health insurers and self-funded health plans in the country." Opening Br. 48. Plaintiffs, however, acknowledge that they "are not relying on this database to establish ascertainability," and details of the "database" are vague. Opening Br. 48 n.11. If the database cannot reliably be used to *ascertain* class members, as Plaintiffs apparently concede, it cannot be reliably be used to *notify* them. Class members cannot be notified if Plaintiffs cannot figure out who they are.

*Second*, ascertainability protects the defendant's right to challenge the evidence used to prove class membership. *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013); Opening Br. 49. Here, class certification would be grossly unfair to the defendants. They will be faced with an enormous stack of PBM records, none of which identify the end payor. If there was no class action but instead a single plaintiff, then perhaps the defendant could determine the identity of the end payor by subpoenaing entities listed on a PBM record and laboriously following the trail of agreements until the end payor can finally be discerned. But when there are millions of PBM records, this becomes impossible. No defendant could expend the time

and effort necessary to reverse-engineer the end payor for every single purchase of Niaspan in America over a multi-year stretch. As a practical matter, the class action device would strip defendants of their right to meaningfully defend their rights. This outcome would violate the Rules Enabling Act, which bars courts from using the class-action device in a way that would "abridge … any substantive right" of any party. 28 U.S.C. § 2072(b).

Plaintiffs insist there is no unfairness to defendants here because "business records for every Niaspan transaction are required under federal law" and they are not *solely* relying on affidavits. Opening Br. 49. But business records cannot protect class-action defendants when those business records do not contain useful information. Federal law requires *someone* to be identified on PBMs' business records, but that someone is not, in general, the end payor. The mere existence of these business records therefore is insufficient to protect the defendants' due process rights.

*Third*, ascertainability enforces the preclusive effects of a class-action judgment or settlement by allowing the parties to that judgment or settlement to be identified. *City Select*, 867 F.3d at 439; *see* Opening Br. 49-50. Here, if a class is certified and the case settles or proceeds to judgment, it will be impossible to identify the class members bound by that settlement or judgment. Plaintiffs suggest that if a hypothetical future plaintiff files a lawsuit and claims it is not a class member, the

defendant can conduct an investigation at that point. Opening Br. 49-50. But judgments are supposed to be clear. The basic question of who is bound by the judgment should not depend on laborious after-the-fact investigations.

*Fourth*, ascertainability ensures that class actions can proceed efficiently. *City Select*, 867 F.3d at 447; Opening Br. 50. The district court had ample grounds for determining that there was no efficient way to identify class members. Plaintiffs' generalized reference to "automated, software-based processing of PBM data," Opening Br. 50, simply reflects their disagreement with the district court's findings.

*Fifth*, ascertainability allows a court to evaluate whether the explicit requirements of Rule 23 are satisfied. *Byrd*, 784 F.3d at 162; Opening Br. 50. Plaintiffs point to the district court's conclusion that Rule 23(a)'s requirements are satisfied. Opening Br. 50. But the district court did not decide whether Rule 23(b)'s superiority and predominance requirements were satisfied. A-89. Had the district court reached those questions, it would have concluded they were not.

If a class is certified, individualized questions would overwhelmingly predominate, and class adjudication would be completely unmanageable. Suppose a class is certified, a trial is held, and the jury finds an antitrust violation. Then what?

The court will need to figure out some way to determine who the class members are, and how much money they should get. The court will have two tools at its disposal: over 20 million PBM records which do not identify an end payor, and an

23

unreliable expert who has yet to propose a "batching" and "filtering" technique that will actually work. Defendants' Br. 11.

The district court will have two options. First: permit the parties to inspect all 20 million PBM records and take third-party discovery in an effort to reverse-engineer the end payor for each transaction. This analysis would take countless hours to complete. To say these individualized inquiries would predominate over common questions would be an understatement.

Second: adopt a default rule that the entity on the PBM (or whatever entity is the product of Plaintiffs' unreliable "batching" and "filtering" technique) is the class member. This would save time—but would also render the outcome of the proceeding hopelessly inaccurate and would result in unfairness to both the defendants and to end payors who would never get paid. Given that there is no possible way to efficiently manage this litigation in a manner that is fair to all stakeholders, class litigation is not "superior" to individualized litigation.

Hence, in this case, ascertainability lives up to its billing as a mechanism of weeding out class actions that do not meet Rule 23's predominance and superiority requirements.

**V.    This Case Would Be a Poor Vehicle to Reconsider Ascertainability En Banc.**

Plaintiffs suggest that the court should reconsider its ascertainability precedents en banc.  For the reasons explained above, those precedents are correctly decided.  But even if the Court were inclined to reconsider the issue, this case would be a poor vehicle because a class could not be certified under any circuit's standard.

In the proceedings below, Plaintiffs relied on cases within the First, Second, and Fourth Circuits certifying classes of end payors.  A-87 (collecting cases).  The district court observed that those cases were decided in circuits that have not expressly imposed ascertainability requirements.  A-87 – A-88.  But the district court also observed that the factual record in this case differs from the factual record in Plaintiffs' cited out-of-circuit case law.  *Id.*

It is the latter distinction—not any difference in circuit precedent—that explains why the district court reached a different decision from the out-of-circuit courts that certified end-payor classes.  As Defendants explain, those courts did not perceive any risk that objective records would not reliably identify end payors.  Opening Br. 50-52.  Indeed, that issue apparently was not litigated in those cases.  For instance, in *In re Ranbaxy Generic Drug Application Antitrust Litigation*, 338 F.R.D. 294 (D. Mass. 2021), Craft asserted that PBM records included data fields that allowed for easy identification of end payors.  The defendants apparently did

not push back on that assertion, and the court accepted it uncritically. *Id.* at 308. The same is true in Plaintiffs' other cases: the plaintiffs asserted that record evidence could be used to identify end payors, the defendants accepted that premise, and the court therefore did too. Opening Br. 50-52

If *this* case, with *this* evidentiary record, had been litigated in other circuits, those other circuits very well may have found that predominance and superiority were not satisfied. As explained above, Rule 23's requirements are not satisfied when it is impossible to know who is in the class. Conversely, if the district court had ruled, as a factual matter, that PBM records render end payors easily identifiable, then it would likely have found ascertainability satisfied. Indeed, in this case, the ascertainability requirement functioned exactly as it was intended. It served as a crucial tool in guiding the court's determination that class action litigation would not be feasible. Other circuits faithfully applying Rule 23's standards would reach the same ultimate conclusion. If the court reconsiders the ascertainability requirement en banc, it should do so in a case where that requirement is *not* doing important work.

## CONCLUSION

This Court should affirm the denial of class certification.


Dated:  March 21, 2022                    Respectfully Submitted,

                                          /s/ Adam G. Unikowsky
Tara S. Morrissey                            Adam G. Unikowsky
Tyler S. Badgley                          JENNER & BLOCK LLP
U.S. CHAMBER LITIGATION CENTER            1099 New York Ave. NW Suite 900
1615 H St., NW                            Washington, DC 20001
Washington, DC 20062                      (202) 639-6000
                                          aunikowsky@jenner.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 29(a)(4) and 32(g), and Local Rule 31.1(c) and 28.3(d), the undersigned counsel certifies as follows:

1.    I am a member of the bar of this Court.

2.    This brief complies with the type-volume limitation of Rule 29(a)(5) because the brief contains 6,052 words, excluding the parts of the brief exempted by Rule 32(f).

3.    This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because the brief was prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

4.    The text of the electronic brief is identical to the text in the paper copies.

5.    A virus detection program, Microsoft Security Essentials, has been run on the file and no virus was detected.

I understand that a material misrepresentation may result in the Court's striking the brief and imposing sanctions. If the Court so desires, I will provide an electronic version of the brief and/or copy of the work or line print-out.

Dated:  March 21, 2022                    */s/ Adam G. Unikowsky*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that that on March 21, 2022, I electronically filed the foregoing brief with the Clerk of the Court using the appellate CM/ECF system.  Ten hard copies of the foregoing brief were sent to the Clerk's Office via overnight delivery. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/ Adam G. Unikowsky*